UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **HUGO GARCIA** | **CIVIL ACTION** |
| **VERSUS** | |
| **WESTLAKE CHEMICAL CORPORATION, ET AL.** | **NO. 18-00764-BAJ-EWD** |

## RULING AND ORDER

Before the Court is Defendant NLB Corporation's **Motion For Summary Judgment (Doc. 81)**. Plaintiff opposes the Motion. (Doc. 84). Defendant filed a Reply. (Doc. 89). The parties filed supplemental briefing. (Doc. 115; Doc. 116). Following a hearing on the matter, and for the reasons stated herein, the Motion is **DENIED.**

### I. FACTS

This is a personal injury matter. Plaintiff Hugo Garcia alleges that he was injured while "performing hydro-blasting work at a chemical plant owned and operated by Defendants Westlake Chemical Corporation, Westlake Chemical LLC, and Axiall LLC" as part of his employment with Turner Industries, LLC. (Doc. 81-1, ¶ 1; Doc. 84-1, ¶ 1). Plaintiff further alleges that while he was using a hydro-blasting gun to perform that work, the whip hose attached to the hydro-blasting gun (hereinafter "Whip Hose") failed, causing highly pressurized water to strike his hands and knock him to the ground. (*Id.*).

1

Plaintiff alleges Louisiana Products Liability Act ("LPLA") claims against Defendant NLB Corporation as the alleged manufacturer of the Whip Hose. (Doc. 40, ¶¶ 5; 12; 21–25). Plaintiff asserts that he was "injured during normal and anticipated use of the [Whip] Hose because the [Whip] Hose was unreasonably dangerous." (*Id.* at ¶ 22). NLB moved for summary judgment, arguing that it was neither the seller nor manufacturer of the Whip Hose, and accordingly, it cannot be held liable under the LPLA. (Doc. 81).

## II. PROCEDURAL HISTORY

This matter was removed to the Court on August 13, 2018, based on diversity jurisdiction, 28 U.S.C. § 1332. (Doc. 1). A federal court sitting in diversity applies the substantive law of the forum state. *Lewis v. M7 Prods., LLC*, 427 F. Supp. 3d 705, 722 (M.D. La. 2019) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Accordingly, the Court will apply Louisiana law.

## III. LEGAL STANDARD

### A. Summary Judgment

A court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on motions for summary judgment, courts are required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Coleman v. Hous. Indep. School Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

To survive summary judgment, however, the nonmoving party must do more than allege an issue of material fact: "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citations and quotation marks omitted). A party that fails to present competent evidence opposing a motion for summary judgment risks dismissal on this basis alone. *E.g., Broussard v. Oryx Energy Co.*, 110 F. Supp. 2d 532, 536 (E.D. Tex. 2000) ("Plaintiff produced no genuine issue of material fact to prevent the granting of [Defendant's] Motion, and therefore, the Court could grant [Defendant's] Motion for Summary Judgment on this basis alone.").

### B. Louisiana Products Liability Act

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52. To prevail on a LPLA claim, plaintiff "must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused

by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." *Cooper v. Wyeth, Inc.*, No. CIV.A. 09-929-JJB-CN, 2010 WL 2653321, at *1 (M.D. La. June 25, 2010) (citing *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 260–61 (5th Cir. 2002); La. Rev. Stat. § 9:2800.54(A)). A product is considered unreasonably dangerous in only four circumstances: (1) defect in the product's construction or composition; (2) design defect; (3) inadequate warning; or (4) failure to conform the manufacturer's express warranty. *Cooper*, 2010 WL 2653321, at *1 (citing La. Rev. Stat. § 9:2800.54(B)(1–4); *Jefferson v. Lead Indus. Ass'n*, 106 F.3d 1245, 1248 (5th Cir. 1997) (holding that Louisiana law only recognizes the four theories of recovery for products liability actions set forth by the LPLA)).

## IV. DISCUSSION

NLB argues that it did not sell or manufacture the Whip Hose that allegedly caused Plaintiff's injuries, and accordingly, cannot be held liable as a "manufacturer" under the LPLA. (Doc. 81-1, p. 5). NLB asserts that because Plaintiff has failed to present sufficient evidence to prove otherwise, the Court should grant summary judgment in NLB's favor. (*Id.*).

Plaintiff responds that there is ample evidence for a jury to find that the Whip Hose was sold by NLB. (Doc. 84, p. 15). Additionally, Plaintiff contends that he must only establish, and has established, that NLB held the Whip Hose out "as [its]

4

own or otherwise [held itself] out to be the manufacturer of the [Whip Hose]." (Doc. 115, p. 6). Accordingly, Plaintiff contends that summary judgment should be denied. For the reasons stated below, the Court finds that a genuine issue of material fact precludes summary judgment.

Plaintiff may only recover from a defendant who qualifies as a manufacturer of the product under the LPLA. *Vita v. Rooms to Go La. Corp.*, No. CIV.A. 13-6208, 2014 WL 6835913, at *2 (E.D. La. Dec. 3, 2014) (citing La. Rev. Stat. § 9:2800.52 (1988)). The LPLA defines "manufacturer" in several ways:

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
>
> **(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.**
>
> (b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
>
> (c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.
>
> (d) A seller of a product of an alien manufacturer if the seller is in the business of importing or distributing the product for resale and the seller is the alter ego of the alien manufacturer. The court shall take into consideration the following in determining whether the seller is the alien manufacturer's alter ego: whether the seller is affiliated with the alien manufacturer by way of common ownership or control; whether the seller assumes or administers product warranty obligations of the alien manufacturer; whether the seller prepares or modifies the product for distribution; or any other relevant evidence. A "product of an alien manufacturer" is a product that is manufactured outside the United

> States by a manufacturer who is a citizen of another country or who is organized under the laws of another country.

La. Rev. Stat. § 9:2800.53(1) (emphasis added). The LPLA defines a "seller" as "a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value." *Id.* § 9:2800.53(2).

Louisiana courts require the identification of a product's manufacturer in product liability cases. *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 246 (E.D. La. 1996), *aff'd*, 106 F.3d 1245 (5th Cir. 1997) (citing *Baldwin v. Kikas*, 635 So. 2d 1324, 1327 (La. App. 4th Cir. 1994), *writ denied*, 643 So. 2d 144 (La. 1994) (affirming summary judgment because of insufficient evidence of identity of manufacturer or seller); *see also Maldanado v. State Through Dept. of Transp.*, 618 So. 2d 537, 538–39 (La. App. 4th Cir. 1993), *writ denied*, 623 So. 2d 1309 (La. 1993) (proof of identity of manufacturer is element of plaintiff's claim)). Louisiana Revised Statutes § 2800:54(D) provides that Plaintiff has the burden of proving the elements of Subsection 2800.54(A).[1] Here, Plaintiff bears the burden of proving that NLB qualifies as a "manufacturer" of the Whip Hose under the LPLA. *See Maldanado*, 618 So. 2d at 538–39. The Court will review the record evidence Plaintiff offered to establish NLB as both the seller and manufacturer of the Whip Hose in turn.

---

[1] Louisiana Revised Statutes § 2800:54(A) provides: "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."

6

## A. NLB as Alleged Seller of Whip House

NLB admits that it sold three whip hoses to Axiall in 2012, but it alleges that all three hoses were sold to Axiall six years prior to the incident. (Doc. 81-1, p. 2, 5–6). NLB contends that the Whip Hose would not have been stored for six years prior to use. (*Id.*) NLB also argues that the hose was changed out five times before 2018, so logically, the Whip Hose involved in the incident could not have been an NLB hose. (*Id.* at p. 2–3).

Plaintiff responds that the sales records, deposition testimony, and physical evidence point to the NLB as the seller of the Whip Hose. (Doc. 84, p. 15). Specifically, Plaintiff argues that the Whip Hose was old and NLB did not offer recommendations on inspecting whips or their shelf life. (*Id.* at p. 9, 15–16). In support of his argument, Plaintiff presents the following record evidence.

First, Plaintiff points to the Affidavit of Levy Jackson, Turner hydroblaster. (Doc. 84-9). Jackson stated that the Whip Hose was in "bad condition" and told "[Turner] that the hoses were in bad condition and that Turner was lucky that no one had been seriously injured or killed." (Doc. 84, p. 8–9 (citing Doc. 84-9, ¶ 10)).

Second, Plaintiff presents Tompkins corporate representative William Hartman's deposition testimony.[2] Hartman inspected the Whip Hose and testified as follows:

> Q. Did it appear to you the hose could have been in use for periods over five years?

---

[2] Plaintiff alleged LPLA claims against Tompkins as the alleged manufacturer of the shroud involved in the alleged incident. (Doc. 40, ¶ 13). Tompkins has since been dismissed from the case. (Doc. 92; Doc. 93).

7

> A. Possibly.
>
> Q. And is that also true of the sleeve?
>
> A. Yes. It was very crusty feeling. It was -- it appeared to be very old.

(Doc. 84, p. 9 (citing Doc. 84-10, p. 18–19)).

Third, Plaintiff submits third-party expert Element Materials Technology's analysis of the Whip Hose, wherein it found that "water had been leaking . . . for some period of time." (Doc. 84, p. 9 (citing Doc. 84-11)).

Fourth, Plaintiff raises NLB corporate representative Mike Burns's deposition testimony. Burns testified that NLB does not offer recommendations on inspecting whips or on their shelf life:

> Q How often should whips on hydroblasting guns be changed out?
>
> A There is no recommended practice on that. We -- you know, it's similar to what Bill said earlier. It's cycle life. It's the environment they are in. Proper storage, care. You know, we may have some – you know, there is just no really good way to tell.
>
> Q Does NLB provide any recommendations on how often whips should be changed out?
>
> A No, sir.
>
> Q Does NLB provide any recommendations on how to inspect whips?
>
> A No, sir.
>
> Q Does NLB provide any information on how frequently whips should be inspected?
>
> A No, sir.

(Doc. 84, p. 9 (citing Doc. 84-6, p. 31–32)).

8

Finally, Plaintiff contends that NLB's argument that whips are not stored for years is undermined by Turner's poor record keeping. Plaintiff asserts that "the only record produced purporting to show that Turner changed out its hydro[-]blasting whips is a single sheet of loose-leaf paper that lacks part numbers or any information beyond initials," as shown below:



(Doc. 84, p. 12–13 (citing Doc. 84-12)).

Viewing all inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff's evidence is sufficient to create a genuine issue of material fact regarding whether NLB sold the Whip Hose. *See* Fed. R. Civ. P. 56. The Court cannot rule, as a matter of law, that NLB did not sell the Whip Hose that allegedly caused Plaintiff's injuries.

### B. NLB as Alleged Apparent Manufacturer of Whip Hose

NLB argues that even if it did sell the Whip Hose, it never manufactured whip hoses. (Doc. 81-1, p. 5). Plaintiff responds that NLB held itself out as the

9

manufacturer of the Whip Hose and can therefore be subject to liability as a "manufacturer" under the LPLA. (Doc. 84, p. 14–15 (citing La. Stat. Ann. § 9:2800.53(1)(a) (defining "manufacturer" as "[a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product."))).

Louisiana courts have repeatedly recognized the "apparent manufacturer doctrine" in which sellers hold themselves out as the actual manufacturers of the products which they sell, and these courts have "held apparent manufacturers liable in the same capacity as manufacturers since 1967." *Vita v. Rooms to Go Louisiana Corp.*, No. CIV.A. 13-6208, 2014 WL 6835913, at *3 (E.D. La. Dec. 3, 2014) (citing *Chevron USA, Inc. v. Aker Maritime, Inc.*, 604 F.3d 888, 895 (5th Cir. 2010); *Penn v. Inferno Mfg. Corp.*, 199 So. 3d 210, 214–15 (La. App. 1st Cir. 1967)). This liability is based on the premise that "when [a] vendor puts only its name upon the product without indicating that it is actually the product of another[,] then the public is induced by its reasonable belief that it is the product of the vendor to rely upon the skill of the vendor and not the skill of any other." *Vita*, 2014 WL 6835913, at *3 (citing *Chevron*, 604 F.3d at 896 (additional citations omitted)).

"As a general rule, it takes very little under Louisiana law to present a jury issue if a product does not bear the actual manufacturer's mark." *Chevron USA, Inc.*, 604 F.3d at 896 (emphasis added). For example, an unlabeled bungee cord with a price tag reading "ACE PRICE $ $2.95" was enough to survive summary judgment

10

on the claim that Ace Hardware, the seller of the cord, held itself out as the cord's manufacturer. *Id.* (citing *Louviere v. Ace Hardware Corp.*, 915 So. 2d 999, 1002 (La. App. 3d Cir. 2005); *Cooke v. Fairmont Hotel Co.*, Civ. A. No. 90–4759, 1993 WL 35146, at *1 (E.D. La. Feb. 5, 1993) (shipping labels with the vendor's name were the only indication of provenance)).

The threshold for apparent manufacturer liability has led to the observation that "[h]olding out a product in any significant manner as one's own is likely to earn one the label 'manufacturer.'" *Chevron USA, Inc.*, 604 F.3d at 896 (citing *Chastant v. SBS–Harolyn Park Venture*, 510 So. 2d 1341, 1344 (La. App. 3d Cir. 1987); *Matthews v. Wal–Mart Stores, Inc.*, 708 So. 2d 1248, 1251 (La. App. 4th Cir.1998) (Plotkin, J., dissenting) (additional citations omitted)). "On the other hand, courts have reversed jury verdicts when upholding the verdict would allow apparent-manufacturer liability for any seller who sold a product." *Chevron USA, Inc.*, 604 F.3d at 896 (citing *Matthews*, 708 So.2d at 1249 ("The court is surely not in the position to hold that any seller of a new lamp made in China is liable for unknown defects.") (additional citations submitted)).

Beyond product labeling, courts have also considered whether the product itself left the consumers with the impression that the seller was the manufacturer and whether the seller had a reputation as a manufacturer in its market. *Chevron USA, Inc.*, 604 F.3d at 896 (citing *Penn*, 199 So. 2d at 217 (noting that the "gauge is well known in the oil fields of South Louisiana" and identified with the distributor); s*ee also Hebel v. Sherman Equip.*, 92 Ill.2d 368, 65 Ill.Dec. 888, 442

11

N.E.2d 199, 203 (1982) ("It is thus apparent that whether a holding out has occurred must be judged from the viewpoint of the purchasing public, and in light of circumstances as of the time of purchase.") (additional citations omitted)). Courts have also considered marketing materials and product guarantees. *Chevron USA, Inc.*, 604 F.3d at 896 (citing *Landry v. State Farm Fire & Cas. Co.*, 504 So. 2d 171, 173–74 (La. App. 3d Cir. 1987)).

Here, Plaintiff presents the following evidence to establish that NLB held itself out as the manufacturer of the Whip Hose. (*See* Doc. 84; Doc. 115).

First, Plaintiff points to NLB corporate representative Burns's deposition testimony, wherein he agreed that the Whip Hose "looked a lot like" the NLB Whip:

> Q. [W]hen you saw the actual hose itself, you could not at that point say to yourself this is not even a hose that is sold by NLB, could you?
>
> A. No, sir.
>
> Q. And the reason is because the hose that you saw looked a lot like NLB Part No. SW-15K-7, correct?
>
> A. Correct.

(Doc. 84, p. 8–11 (citing Doc. 84-6)).

Plaintiff also relies on Burns's agreement that NLB's materials "could be interpreted" to identify NLB as the Whip Hose's manufacturer:

> Q. And this page that talks about whip hoses does not identify any hose manufacturers, does it?
>
> A. No, sir.
>
> Q. It doesn't say, "we sell hoses made by Manuli," right?
>
> A. No, sir.

12

> Q. Doesn't say, "NLB will give you a Parker hose," correct?
>
> A. No, sir.
>
> Q. It says, "NLB whip hoses," right?
>
> A. Yeah.
>
> Q. So it would be fair for someone reading this to assume that NLB makes the whip hoses, wouldn't it?
>
> A. I guess it could be interpreted as such.

(Doc. 84, p. 11 (citing Doc. 84-6, p. 44–45)).

Second, Plaintiff raises NLB's product manual, which describes whip hoses as "NLB whip hoses."[3] (Doc. 84, p. 3 (citing Doc. 84-7, p. 19)).

> **Whip Hoses**
>
> NLB whip hoses help protect hand lance operators from potentially dangerous hose failures. Each whip hose assembly consists of a short length of hose, usually no more than 10 feet (3.05m). This is covered with a heavy, dense fabric or reinforced plastic tubing designed to diffuse the energy released by a hose failure.
>
> NLB offers whip hoses for all popular pressures, from 10,000 to 40,000 psi (690 to 2,760 bar).
>
> Attachment to your hand lance may require additional fittings. Please consult NLB about your specific application.

---

[3] The Court notes that Defendant objected to the use of this exhibit during oral argument. Even if the Court refused to consider this evidence, however, the remaining evidence is sufficient to raise a genuine issue of material fact that precludes summary judgment.

Third, Plaintiff asserts that NLB's product materials fail to mention any other possible manufacturer other than NLB, as shown below. (Doc. 84, p. 10).

> **HIGH PRESSURE WATER JETTING SYSTEMS**
> Water jet productivity starts here.
>
> NLB Corporation has been leading the way in water jet productivity since 1971. You won't find a wider range of high-pressure and UHP water jet pump units, water blasting equipment, and accessories anywhere or higher standards of quality and reliability.
>
> With in-house engineering, manufacturing, and customer support that set the industry standard, NLB is the water jet choice of contractors and operations professionals around the world. We'd like to be your first choice, too.
>
> You'll find a lot of useful information here–not just about NLB, but about water jet safety, applications, FAQs, and more. If you don't find the water blasting equipment you're looking for, just click on the contact tab for a phone number or email form.
>
> Thanks for visiting us today.

Fourth, Plaintiff relies on the deposition testimony of Scott Smith, former owner of nonparty Wellco Supply Co., the likely manufacturer of any hose that NLB sold.[4] (Doc. 115, p. 3). Plaintiff argues that Smith's testimony supports that the hoses NLB purchased had no branding, no product instructions, and no distinguishing marks other than the pressure rating. Smith testified as follows:

> Q. Now, regardless of which of those products are purchased, would there be any branding that would say Wellco on it?
>
> A. No.
>
> Q. And if I were to just look at one of the hoses as a layperson, would I have any idea that it had been manufactured by a company called Wellco?
>
> A. No.

(Doc. 115, p. 4 (citing Doc. 115-1, p. 41)).

---

[4] NLB asserts that "during the relevant time period, NLB obtained whip hoses from" Wellco. (Doc. 116, p. 3). Plaintiff contends that NLB's corporate representative testified that Wellco "likely manufactured any hose NLB sold." (Doc. 115, p. 3). Smith testified that he could not "tell [] without records" whether he was selling whip hoses to NLB in 2012. (Doc. 116-2, p. 12).

14

Additionally, Plaintiff contends that "Smith explained that NLB was responsible for providing its customers with all product information, disclaimers, warranties, warnings, and instructions":

> Q. [W]hen you provided whip hoses to NLB was it your understanding that any disclaimers or instructions or materials that were provided to the purchaser would be created by NLB?
>
> A. Yeah, the application information would be provided by NLB not by me.
>
> Q. Would that include information that might have contained warnings related to the proper use of the product?
>
> A. Yeah. NLB would have access to all of the information that we provide on our Web site and also on a CD disc as far as the engineers go, they go through and specify what they want and they have all of the specifications provided to them.

(Doc. 115, p. 4–5 (citing Doc. 115-1, p. 44–46)).

Viewing all inferences in the light most favorable to Plaintiff, the Court finds Plaintiff's evidence sufficient to create a genuine issue of material fact regarding whether NLB held itself out as the manufacturer of the Whip Hose, if NLB was indeed the seller of the Whip Hose. *See* Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party."). The Court cannot rule, as a matter of law, that NLB does not qualify as a "manufacturer" under the LPLA, as required to grant summary judgment in NLB's favor.

V.  **CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendant NLB Corporation's **Motion For Summary Judgment (Doc. 81)** is **DENIED.**

Baton Rouge, Louisiana, this 21st day of September, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**